STATE of Wisconsin, Plaintiff-Respondent,†

v.

Patrick C. CARTER, Defendant-Appellant.

Court of Appeals

*No. 2006AP1811–CR. Submitted on briefs June 13, 2007.
—Decided November 1, 2007.*

2007 WI App 255

(Also reported in 743 N.W.2d 700.)

† Petition to review granted 3/18/08.

 

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin, assistant state public defender,* Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Warren D. Weinstein, assistant attorney general,* and *J.B. Van Hollen, attorney general.*

Before Higginbotham, P.J., Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. Patrick Carter appeals the circuit court's order denying him sentence credit for time spent in custody in Illinois as the result of both a Wisconsin fugitive warrant issued in this case and an arrest on Illinois charges. The circuit court imposed a sentence in this case concurrent to the Illinois sentence, which had already been imposed. The circuit court concluded that Carter was not entitled to sentence credit for any time confined in Illinois, but only after he was returned to Wisconsin for the charge in this case.

¶ 2. We conclude that, because Carter was arrested and confined in Illinois under a Wisconsin fugitive warrant issued in this case, he was entitled to

sentence credit on this concurrent sentence from the date he was arrested in Illinois until the date he was sentenced on the Illinois charge. We reject the State's argument that, because he was not exclusively in custody on the Wisconsin charge, he was not entitled to sentence credit for the time he was in custody in Illinois. Accordingly, we reverse and remand with directions to the circuit court to grant 227 additional days of sentence credit.

## BACKGROUND

¶ 3. The relevant facts are not disputed. A criminal complaint was issued in this case on July 23, 2003, in Milwaukee County Circuit Court. The complaint charged Carter with first-degree recklessly endangering safety in violation of WIS. STAT. § 941.30(1). On the same day, a felony warrant for Carter's arrest was issued, authorizing extradition from any location within the United States.

¶ 4. On December 14, 2003, Carter was taken into custody at the Cook County Jail in Illinois and a "hold" was placed on him for the Wisconsin "fugitive warrant" and for Illinois charges of armed robbery and driving while under the influence (DUI).[1] On December 16, 2003, he was "charged" with the Wisconsin fugitive warrant. He was given a seven-day sentence on the Illinois DUI conviction, which was completed on December 21, 2003. He continued in custody in the Cook County Jail. On March 11, 2004, a Wisconsin governor's

---

[1] The facts in this paragraph are taken from information provided to a Wisconsin investigator by the Cook County Illinois Police Extradition Unit and by the Cook County Department of Corrections, and we use the terminology employed by the Illinois agencies.

warrant was served on him. On October 19, 2004, he was convicted on the Illinois armed robbery charge. On October 20, 2004, the extradition case based on the Wisconsin fugitive warrant was dismissed and that warrant was vacated. Carter remained in the Cook County Jail and on November 2, 2004, was sentenced to fourteen years on the armed robbery charge. On November 5, 2004, he was transferred to the Illinois prison system to begin serving his sentence.

¶ 5. On June 1, 2005, Carter made an initial appearance in this case, having been extradited to Wisconsin for this case while still serving the Illinois sentence. On August 30, 2005, he entered a guilty plea to the charge of first-degree reckless endangerment. The court accepted the plea and sentenced him to twelve and one-half years, seven and one-half years of initial confinement and five years of extended supervision, to be served concurrently with the Illinois sentence; the court stated that this sentence could be served in either Illinois or Wisconsin.[2] Carter was given ninety-one days of sentence credit, from June 1, 2005 to August 30, 2005.[3]

---

[2] With certain exceptions, courts may impose a sentence concurrent with or consecutive to any other sentence that is imposed at the same time or previously. Wis. Stat. § 973.15(2).

[3] On the date of sentencing, defense counsel and the prosecutor agreed to ninety-one days of sentence credit, beginning with June 1, 2005, (described on the computation form as "date of arrest") and ending on August 30, the date of sentencing. At sentencing, the amount of sentencing credit was not specifically discussed, although the court stated that "the time remaining on [Carter's] sentence [in this case] is the total length of [his] sentence less any time served in custody." We observe that, although the initial judgment of conviction shows in the text ninety-one days of sentence credit, the line for sentence credit says "0."

¶ 6. Carter filed a postconviction motion seeking sentence credit under WIS. STAT. § 973.155 for 324 days, from December 14, 2003, when he was taken into custody in Illinois on the Wisconsin fugitive warrant as well as on the Illinois charges, until November 2, 2004, when he was sentenced on the Illinois armed robbery charge.[4] The circuit court decided that Carter was not entitled to sentence credit for that period of time, but only from May 26, 2005, when he "was arrested in connection with the Wisconsin charge . . ." (according to the Crime Information Bureau Final Disposition Report) to August 30, 2005, when he was sentenced in this case. Because the court used May 26 rather than June 1 as the beginning date, it ordered six more days of sentence credit for a total of ninety-seven days.[5] The court decided that before May 26, 2005, Carter was not in custody "in connection with the course of conduct for which [the Wisconsin] sentence was imposed," as required by § 973.155(1)(a). Based on its reading of *State v. Demars*, 119 Wis. 2d 19, 349 N.W.2d 708 (Ct. App. 1984), the court rejected Carter's argument that the Wisconsin fugitive warrant and the Wisconsin governor's warrant resulted in custody in Illinois in

[4] Carter explained in his motion that he was entitled to sentence credit only until November 2, 2004, because under *State v. Beets*, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985), the sentencing on the armed robbery charge "severed" the connection of his custody to the Wisconsin charges. There is no dispute between the parties that this is the end date for the period for which Carter is entitled to sentence credit if he is entitled to sentence credit while in custody in Illinois.

[5] We observe that the line for sentence credit in the resulting amended judgment of conviction still states "0," although the text of the judgment has been amended to ninety-seven days of sentence credit.

connection with the course of conduct for which he was sentenced in this case. The court also stated that a defendant is not in custody in connection with the course of conduct for which the sentence is imposed until "his custody is surrendered to that jurisdiction," citing *State v. Nyborg*, 122 Wis. 2d 765, 768, 364 N.W.2d 553 (Ct. App. 1985).

## DISCUSSION

¶ 7. On appeal Carter contends that the circuit court erred in its analysis of *Demars* and *Nyborg* and that under *State v. Ward*, 153 Wis. 2d 743, 745 n.3, 452 N.W.2d 158 (Ct. App. 1989), he is entitled to sentence credit because his Illinois custody was "in connection with" the conduct for which the concurrent Wisconsin sentence was imposed. The State in response does not endorse the circuit court's reading of *Demars* and *Nyborg*. Instead, the State argues that we should apply Wis JI—Criminal SM (Special Material) 34A at p.5,[6] which states that a person is entitled to credit when detained in jail in another state "when that detention results *exclusively* from a Wisconsin warrant or detainer."[7] (Emphasis added.)

---

[6] The special material is prepared by the Criminal Jury Instructions Committee and "is a comprehensive study of the sentence credit statute with guidelines for its implementation in the trial court." *State v. Gilbert*, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983).

[7] The heading of the State's argument is "The Circuit Court Erred When It Denied Carter Additional Sentence Credit." Carter's reply brief asserts that this is a confession of error. It is not. It is either a mistake or a restatement of Carter's argument to which the State is responding. The State's responsive argument and its request that we affirm the circuit court make clear

¶ 8. The determination of the proper amount of sentence credit requires that we apply WIS. STAT. § 973.155 and existing case law to undisputed facts. This presents a question of law, which we review de novo. *State v. Tuescher*, 226 Wis. 2d 465, 468, 595 N.W.2d 443 (Ct. App. 1999).

■

¶ 9. WISCONSIN STAT. § 973.155(1)(a) entitles a convicted offender to "credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed . . . ."[8] The State does not dispute that Carter was in custody in Illinois from December 14, 2003 to November 2, 2004, both because of the Illinois charges (after December 21 it was only on the armed robbery

---

that, although the State is not relying on the circuit court's analysis, it is advocating that we affirm its conclusion.

[8] WISCONSIN STAT. § 973.155(1) provides in full:

Sentence credit. (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) and sub. (1m) include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 302.113(8m), 302.114(8m), 304.06(3), or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

charge) and pursuant to the Wisconsin fugitive warrant.[9] There is also no dispute that the sentence in this case is concurrent to the Illinois sentence. The dispute is whether Carter's custody in Illinois was "in connection with" his Wisconsin sentence. The parties appear to agree that there is no case that directly addresses whether a defendant is entitled to sentence credit in these circumstances.

¶ 10. Carter relies on *Ward*, in which we held that the defendant was entitled to credit for presentence incarceration against each concurrent three year sentence. 153 Wis. 2d at 745. We reasoned that, if the credit was applied to only one of the concurrent sentences the

[9] The State's recitation of facts says: "Cook County police arrested Carter on December 14, 2003, for robbery and DUI in Illinois and for 'Extradition Cases.' On December 16, 2003, Carter was charged with Wisconsin Fugitive Warrant . . . ." In its supplemental brief, the State asserts that it is "possibly unclear" whether it was the arrest on December 14, 2003, . . . or the fugitive warrant on December 16, 2003, that sufficiently establishes that Carter was arrested in part based on the Wisconsin crime. However, the State describes this difference as "deminimis." Because the State does not argue that December 16, 2003 is the correct date, or that any ambiguity must be resolved against Carter, we use December 14.

As noted in the background section, the record shows that on October 19, 2004, the day after the conviction on the Illinois armed robbery charge, the extradition case based on the Wisconsin fugitive warrant was dismissed and that warrant was vacated. It is unclear from the record why this occurred and what this means regarding the Wisconsin governor's warrant. However, the State does not suggest that the time period between October 20, 2004 and November 2, 2004, should be treated differently from the time period between December 14, 2003 and October 20, 2004, with respect to the reasons Carter was in custody in Illinois. Therefore, we do not make such a distinction in our analysis.

defendant would, in effect, not receive the sentence credit to which he was entitled. *Id.*; *see also State v. Rohl*, 160 Wis. 2d 325, 330, 466 N.W.2d 208 (Ct. App. 1991) (("credit for a single episode of jail time toward two (or more) sentences—will be granted only for sentences which are concurrent") (citing *State v. Boettcher*, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988)).

¶ 11. The State does not address *Ward* or the statements in *Boettcher* and *Rohl* to the same effect. It relies on the portion of Wis JI—Criminal SM-34A which addresses the meaning of "in custody" under Wis. Stat. § 973.155. Section IIIA lists a number of situations in which a person is in "custody" including "detention in jail in another state when that detention results exclusively from a Wisconsin warrant or detainer," Wis JI— Criminal SM-34A at p.5; and it lists a number of situations in which a person is *not* "in custody," including "detention in another state based on an offense committed in that state, even if a Wisconsin warrant or detainer has also been filed." *Id.* at p.6. While the former "in custody" example may suggest that detention *must* result exclusively from a Wisconsin warrant or detainer, it is the latter "not in custody" example that expressly does so. Since both examples are numbered "4" we will refer to both collectively as "Section IIIA(4)."

¶ 12. An explanatory footnote to Section IIIA(4) provides:

> Credit should be granted when, for example, a Wisconsin parolee is arrested in Illinois, solely because of a Wisconsin warrant. Credit should not be granted when a Wisconsin parolee, already in custody on Illinois charges, has a Wisconsin hold or warrant filed against him. This is consistent with the conclusion that filing a detainer against one already in custody in Wisconsin

does not result in "custody" under § 973.155 on the charge which is the subject of the detainer.

*Id.* at p.16 n.8. This footnote then references *Rohl*, 160 Wis. 2d 325, and directs the reader to another footnote that cites *Demars* and *Nyborg*.[10]

¶ 13. Examining each of the three cases—*Demars, Nyborg,* and *Rohl*—we conclude that none supports the proposition that a person detained in jail in another state is not "in custody in connection with . . ." under Wis. Stat. § 973.155 unless the person is in custody exclusively pursuant to a Wisconsin warrant.

¶ 14. *Demars*, 119 Wis. 2d at 21–22, addressed the effect on sentence credit of what the parties there called a "detainer"—a request by the Winnebago County district attorney to the Fond du Lac sheriff that, if the defendant should post bond on the charges for which he was then in jail in Fond du Lac County and if his probation hold should be lifted, the sheriff "detain" the defendant because a criminal complaint on other charges had just been issued against the defendant in Winnebago County. The defendant remained in the Fond du Lac jail but was brought to Winnebago County for the initial appearance, entry of pleas, and sentencing. *Id.* at 22 n.4. The defendant argued that he should receive sentence credit on the Winnebago sentences for the time period between the date of the "detainer" and the date he was sentenced because he was in custody in connection with the course of conduct for which he was sentenced. *Id.* at 22.

¶ 15. We concluded the defendant was not entitled to sentence credit from the date of the "detainer."

[10] Although the reference is to footnotes 9 and 10, the correct footnotes appear to be 13 and 15.

*Id.* at 26. We construed "custody" as used in WIS. STAT. § 973.155 to "necessarily result from the occurrence of a legal event, process, or authority which occasions, or is related to, confinement on the charge for which the defendant is ultimately sentenced," and we decided that what the parties called a "detainer" did not meet this definition. *Id.* We observed that there was no formal statutory procedure "governing the processing of inmates or prisoners detained in one county and charged with criminal offenses in another," because the statute on intrastate detainers had been repealed. *Id.* at 23. We also stated that, even in circumstances where a detainer is statutorily recognized such as interstate detainers, *see, e.g.,* WIS. STAT. § 976.05, the detainer itself "carries no custodial mandate"; rather, its function "is to give notice to an institution where a subject is held that his [or her] custody is desired elsewhere and, also, to give notice to the subject of the other charges so that he [or she] might demand a speedy trial."[11] *Id.* at 24. In contrast, we listed the following examples of "lawful process or authority resulting in custody":

> arrest with or without a warrant, arrest upon a capias or bench warrant, unsatisfied bail requirements result-

---

[11] Our statement in *State v. Demars*, 119 Wis. 2d 19, 23, 349 N.W.2d 708 (Ct. App. 1984), that the intrastate detainer statute, WIS. STAT. § 955.22 (1967) was repealed by 1969 Wis. Laws, ch. 255 and "no substitute or equivalent legislation has since been enacted" appears to be an error. Although § 955.22 was repealed by section 55 of that chapter, section 63 created WIS. STAT. § 971.11, "prompt disposition of intrastate detainers"; that statute is still in effect. However, this error does not affect our analysis. We observe that the description of the intrastate detainer statute in *Demars* is also true of § 971.11: it provides a procedure for an inmate of a state prison to request a district attorney to promptly dispose of a pending charge.

ing in confinement, sentence to confinement, temporary detention pursuant to sec. 968.24, Stats. [temporary stop for questioning based on reasonable suspicion], probation or parole holds, and periods of confinement imposed as a condition of probation.

*Id.* at 23.

¶ 16. Although rejecting credit based on the "detainer," we concluded in *Demars* that the defendant was entitled to sentence credit beginning with the date of his initial appearance on the Winnebago County charges. *Id.* at 26. On that date, we stated his "custody was surrendered to the Winnebago county authorities pursuant to the writ of habeas corpus ad testificandum" and cash bail was set on those charges. *Id.*

¶ 17. In *Nyborg*, 122 Wis. 2d at 768, we simply applied *Demars* to similar facts—a detainer filed by one county in another county in which the defendant was confined—without any additional analysis.

¶ 18. Section IIIA(4) read together with the footnote references to *Demars* and *Nyborg* suggests that the detainers in those cases did not trigger sentence credit because the defendants were already in custody. However, that is not correct. As we explained in *Demars*, a "detainer," even a statutorily authorized interstate detainer, does not trigger sentence credit because it does not "legally authorize custody"; it simply notifies the jurisdiction in which the defendant is confined that "his [or her] custody [is] desired elsewhere." 119 Wis. 2d at 24. We specifically distinguished between a detainer and a warrant for an arrest (and other lawful means of arrest). *Id.* at 23. Thus, treating a "warrant" and a "detainer" the same, as does Section IIIA(4), is inconsistent with *Demars*. It is correct to say that, under *Demars*, if a person is placed in custody in another state under the lawful authority of that state and a Wisconsin

*detainer* is filed against them, the person is not "in custody" by virtue of the Wisconsin *detainer* (assuming the detainer has the characteristics of the detainer described in *Demars*). However, there is nothing in either *Demars* or *Nyborg* that supports the proposition that, if a defendant is in custody in another state both because of an arrest under the law of that state and under a Wisconsin warrant, the defendant is not "in custody" under the Wisconsin warrant for purposes of Wis. Stat. § 973.155.

¶ 19. *Rohl*, 160 Wis. 2d 325, does not support that proposition either. *Rohl* concerned consecutive sentences, 160 Wis. 2d at 329–30, and the State agrees with Carter that for this reason it is not applicable in this case. We discuss *Rohl*, however, because it is referred to as authority in Section IIIA(4).

¶ 20. In *Rohl*, 160 Wis. 2d at 328, the defendant was released on parole in Wisconsin and given permission to go to California where his parole was to be supervised. Before the transfer of this parole was arranged, he was arrested and jailed for several criminal charges based on conduct in California. *Id.* Because of these charges, Wisconsin issued a parole violation warrant against him. *Id.* He was convicted of the California crimes, sentenced, and given credit against the California sentence for the time he was confined from the date of his arrest in California to the date of sentencing. *Id.* After he was released from the California prison system, he was returned to Wisconsin and his parole was revoked. *Id.* The hearing examiner ordered that a certain amount of his accumulated good time be forfeited and refused credit for the time spent in presentence confinement in California. *Id.* at 328.

¶ 21. In *Rohl*, we relied on *State v. Boettcher*, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988), and held that

Rohl was not entitled to sentence credit for the California confinement on the Wisconsin sentence because the sentences were consecutive, not concurrent. *Id.* at 330. Under *Boettcher*, we stated, when sentences are consecutive, credit is applied on a day-to-day basis against the total days of incarceration; it is only when sentences are concurrent that a defendant receives credit "for a single episode of jail time toward two (or more) sentences." *Id.* at 329–30. We reasoned that the defendant was not serving the Wisconsin sentence when he was sentenced in California because his Wisconsin sentence of confinement had been "conditionally completed when he was paroled," and the prospect of serving additional prison time was "speculative." *Id.* at 331–32.

¶ 22. *Rohl* does not support the proposition that a defendant is not in custody in connection with a Wisconsin charge for purposes of WIS. STAT. § 973.155 if detained in another state "based on an offense committed in that state, even if a Wisconsin warrant or detainer has been filed." WIS JI—CRIMINAL SM-34A at p.6. The reason sentence credit was denied in *Rohl* was that the California and the Wisconsin post-parole revocation sentences were not concurrent; the reason was *not* that confinement in California did not result "exclusively from a Wisconsin warrant or detainer."[12] WIS JI—CRIMINAL SM-34A at p.5.

---

[12] A footnote to Section IIIA(4) summarizes *State v. Rohl*, 160 Wis. 2d 325, 466 N.W.2d 208 (Ct. App. 1991), as follows:

In *State v. Rohl*, 160 Wis. 2d 325, 466 N.W.2d 208 (Ct. App. 1991), the defendant claimed credit for time served in California while he was on Wisconsin parole. Rohl committed crimes in California, was detained prior to trial, and received full credit for that time on his California sentence before being returned to Wisconsin where his parole was revoked. The court of appeals held that sentence credit was not required in Wisconsin because Rohl had received full credit in California.

¶ 23. The State appears to acknowledge that none of the three cases Section IIIA(4) cites actually supports the proposition that a person detained in jail in another state is not "in custody" under Wis. Stat. § 973.155 unless the custody is exclusively pursuant to a Wisconsin warrant. Nonetheless, the State urges that we adopt this "exclusiveness requirement" because the special material is "persuasive authority."[13] *See State v. Gilbert*, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983) (special material entitled to same weight as the criminal jury instructions committee pattern instructions, which the supreme court has viewed as "persuasive"). The supreme court and this court have acknowledged the qualifications and effort of that committee, *see, e.g., Beets*, 124 Wis. 2d at 383 n.7; *State v. Harvey*, 2006 WI App 26, ¶ 13, 289 Wis. 2d 222, 710 N.W.2d 482, and the committee's interpretation of the law as expressed in the special material is therefore given "careful scrutiny." *See Beets*, 124 Wis. 2d at 383 n.7. However, although we may choose to adopt the view of the law as expressed in the special material after giving it careful scrutiny, we do not do so when our analysis of the case law or of the statute at issue leads us to a different conclusion. *See id.; see also Harvey*, 289 Wis. 2d 222, ¶¶ 13–18.

---

Wis JI—Criminal SM-34A at p.16 n.13. This is for the most part an accurate description of *Rohl*, except that it does not make clear that the reason the defendant was not entitled to credit against both the California sentence and the Wisconsin post-parole revocation sentence was that they were consecutive, not concurrent, sentences.

[13] As the State recognizes, the special material, like the criminal pattern jury instructions, are not binding on the courts. *See State v. Harvey*, 2006 WI App 26, ¶ 13, 289 Wis. 2d 222, 710 N.W.2d 482.

¶ 24. The State does not provide us with a rationale for requiring that a defendant be in custody in another state "exclusively" on a Wisconsin warrant in order to receive sentence credit against a concurrent Wisconsin sentence; and we see none, either explicit or implicit, in the special material. As already noted, in treating a warrant and a detainer in the same way for purposes of custody, Section IIIA(4) is inconsistent with *Demars*. *See* ¶ 18 *supra.* In addition Section IIIA(4) merges the inquiry of when a defendant is "in custody in connection with the course of conduct . . .," which *Demars* addressed, with the inquiry of whether the "connection" must be exclusive. These are two distinct requirements of WIS. STAT. § 973.155(1)(a). *State v. Johnson,* 2007 WI 107, ¶ 31, 304 Wis. 2d 318, 735 N.W.2d 505. "Custody" for purposes of § 973.155(1)(a) is construed according to the statutory definition of "custody" in the escape statute, WIS. STAT. § 946.42(1)(a). *See id.* (citing *State v. Magnuson,* 2000 WI 19, ¶ 15, 233 Wis. 2d 40, 606 N.W.2d 536).

¶ 25. Because Section IIIA(4) is either not supported by or is inconsistent with the case law it cites, we do not view it as persuasive authority for denying sentence credit to Carter solely because he was not in custody in Illinois exclusively on the Wisconsin warrant.

¶ 26. Turning our attention to the language of the statute, we focus on the phrase "in connection with the course of conduct for which [the] sentence is imposed." WIS. STAT. § 973.155. This phrase was recently construed and applied in *Johnson,* 2007 WI 107, which was decided after the initial briefing was completed in this case. In *Johnson* the issue was whether a juvenile who had been committed to a secure juvenile institution based on a prior adjudication was entitled to sentence credit for the time he spent in custody under the juvenile commitment

or an extension thereof pending his conviction and sentencing on an adult battery charge for conduct that occurred during the commitment. *Id.*, ¶ 2. The *Johnson* court applied *Beets*, 124 Wis. 2d 372,[14] to the period of custody from the time of the battery arrest to the time of the second commitment extension hearing because Johnson's commitment had been extended for this time period without regard to the battery, which had not yet occurred at the time of the first extension hearing. *Id.*, ¶ 63. Thus, the court concluded, he was not entitled to sentence credit for that period. *Id.*

¶ 27. For the period after the second extension hearing, the court inquired how large a factor the adult offense was in the extension and, in that context, the court construed and applied the phrase "in connection with" from WIS. STAT. § 973.155. *Id.*, ¶ 67. The court concluded that the phrase was ambiguous in the facts and circumstances of the case because it was subject to both a broad and a narrow interpretation. *Id.*, ¶ 68. The broad interpretation is that the custody "must be, at least in part, the result of a legal status . . . stemming from the course of conduct for which sentence is being imposed." *Id.* (citing WIS JI—CRIMINAL SM34A at IIIB (1995)).[15] The court concluded that this broad interpre-

---

[14] In *Beets*, 124 Wis. 2d at 373–74, the court concluded that when a person on probation is apprehended for the commission of a new crime and is revoked and sentenced on the prior crime, the person is not entitled to credit against the sentence for the new crime for the time served on the sentence for the prior crime while awaiting sentencing on the new crime.

[15] WISCONSIN JI—CRIMINAL SM34A at IIIB (1995), titled "Custody *in connection with* the course of conduct," (underline in original) provides:

> The requirement that custody be "in connection with" the course of conduct means simply that the custody must be, at least

tation was inconsistent with *Beets* because there the court held that, once Beets began serving the sentence on the prior charge, it was irrelevant that he was also awaiting trial on the new charge. *Id.*, ¶ 69. The court decided that a narrower interpretation was suggested by *Beets* and appropriate in the case before it: whether the juvenile would have been in custody after the extension hearing even if he had not committed the adult offense. *Id.*, ¶¶ 69–70. The court affirmed the circuit court's finding that the juvenile would have been in custody anyway. *Id.*, ¶ 76. It therefore concluded the juvenile was not entitled to sentence credit for that period of confinement against the adult sentence. *Id.*

¶ 28. We asked the parties for supplemental briefing on the question whether *Johnson* applies to this case. Both Carter and the State contend it does not because Carter is not requesting credit for the time he was in custody serving his Illinois sentence. They both read the analysis in *Johnson* as limited to a situation like *Beets*, if not exactly like *Beets* in all respects. In addition, Carter contends that, logically, the *Johnson* court could not have intended that the narrow "even if" construction of "in connection with" apply to concurrent sentences because that would effectively deny sentence credit in all cases in which a defendant is in custody on two separate and unrelated charges. One could say, as to each charge, that, even if the person were not in custody on that charge, the person would still be in custody on the other charge. This would overrule *Ward*,

in part, the result of a legal status (arrest, bail, revocation hold, court order, etc.) stemming from the course of conduct for which sentence is being imposed. If the offender was under restraint for reasons related to the course of conduct, credit is required.

Wis JI—Criminal SM34A at p.6.

in Carter's view, and the supreme court could not have intended to do so without even mentioning that case.

¶ 29. We agree with the parties, and, in particular, with Carter's analysis. We do not read *Johnson* to hold that a narrow "even if" construction of "in connection with" applies in every case. In particular, we do not read *Johnson* to hold that such a construction applies where a defendant is seeking credit on a concurrent sentence for time spent in custody on both charges. We conclude that the *Johnson* court did not intend to overrule *Ward* and the statements to the same effect in *Boettcher* and *Rohl*. It is evident that the broader construction underlies *Ward*, because the "even if" construction would have resulted in no sentence credit.

¶ 30. We further conclude that the principle applied in *Ward* and stated in *Boettcher* and *Rohl* applies in this case—that when a defendant is in custody, presentence, on two separate charges and the sentences are concurrent, the defendant is entitled to sentence credit against each sentence. Although in *Ward* the sentences were imposed at the same time, the State has provided no reason, and we see none, why the same rationale does not apply when one sentence is imposed after the other, but is made concurrent to the first sentence. Nor do we see any reason why the fact that the custody is in another state makes a difference, as long as the defendant receives credit only for the time in custody on the Wisconsin charge against the Wisconsin sentence. The State has offered no authority or rationale for a distinction based on in-state or out-of-state custody, other than Section IIIA4, and we have concluded that is not persuasive. Finally, we observe, as both parties here recognize, that, consistent with *Beets*,

there is no credit for time after the defendant begins to serve a sentence on the other charge.

## CONCLUSION

¶ 31. We conclude that Carter is entitled to sentence credit for the days from December 14, 2003, when he was taken into custody in Illinois based on the charge in this case, until November 2, 2004, when he was sentenced on the Illinois charge. We therefore reverse and remand to the circuit court with directions to the circuit court to grant 227 (324 minus 97) additional days of sentence credit.

*By the Court.*—Order reversed and cause remanded with directions.